The People *v.* Schermerhorn.

———— • • ————

THE PEOPLE OF THE STATE OF NEW YORK, SAMUEL J. HUNT, CORNELIUS DUBOIS and JAMES B. TAYLOR, *vs.* JOHN J. SCHERMERHORN, EDWARD BANKER and E. H. SCHERMERHORN.

The king of England was originally the proprietor of the soil under navigable waters. His title extended to the province of New York; and he had power to grant such title to a subject.

That power was delegated to the colonial governor, as the immediate representative of his sovereign.

Accordingly *held* that the patent from Governor Dongan to the inhabitants of the town of Bushwick, dated January, 1687, and the prior grants which it recited

The People *v.* Schermerhorn.

and confirmed, vested in the town of Bushwick, as a corporation, the title to the land under water in Bushwick creek; and that a subsequent grant of the lands thus covered with water, from the commissioners of the land office to the defendants, was void.

The acts of the legislature, authorizing the grants of land under navigable waters in and around Long Island, refer only to public property. They were not designed to confer, nor could they confer, the power to grant the lands of individuals or corporations to others, and particularly without compensation.

Where letters patent were issued by the commissioners of the land office through mistake, and in ignorance of a material fact, that is a valid cause for annulling them, at least to the extent of the mistake.

Where a patent grants to certain persons named, the " freeholders and inhabitants of the town of B. and their heirs, successors and assigns," a tract of land, with all and singular the " *creeks*, harbors, rivers, rivulets, runs, brooks, and streams " within the described limits, the terms used are broad enough to pass the title to lands covered with water in a creek.

In such a case the patentees have the capacity to take the title in their own right; although the object of the patent is to confer the estate upon the town, and the town is not incorporated, in direct terms.

A conveyance of lands by the sovereign authority invests the grantees with the requisite power to take and hold them.

If the grant is to a body of men, under a general description, it creates at least a *quasi* corporation.

By the act of April 10, 1850, relative to grants of land under water, which prohibits a grant to any person other than the proprietor of the adjacent land, and declares that any such grant made to any other person shall be void, the legislature evidently intended to restrict the grant to the owners of the land bordering upon, or adjoining, the waters covering the subject of the proposed grant.

If a patentee must be confined to the land opposite to his own, the lateral limits must be perpendicular to the shore—not to so much of it only as adjoins the subject of the grant—but to its general course.

Thus where the land of a party came to a point on the East river, having no extent adjacent to the water; *Held*, that he was not entitled to a patent for any thing but a perpendicular line into the river.

The publication of the notice of an application for a grant of land under water, required by statute, is absolutely necessary to confer jurisdiction of any particular case upon the commissioners of the land office; and without it, any grant made by them is void.

THIS was an appeal by the defendants, from a judgment entered at a special term, after a trial at the circuit by the court without a jury. The action was brought by the attorney general, on the relation of Hunt, Taylor and Dubois. The complaint alleged that on February 10th, 1851, the people by letters

patent, granted to the defendants lands under water, in and near the mouth of Bushwick inlet, in Kings county. That the attorney general had reason to believe that such letters patent were obtained by fraudulent suggestions, and concealments of material facts, made by the defendants. That the defendants fraudulently concealed from the commissioners of the land office the fact that Hunt and Dubois then held a grant from the state of a part of the lands embraced in the patent. And also the fact that Hunt and Dubois had filled in a bulk-head on a part of the same lands. And also the fact, that Hunt, Taylor and Dubois claimed adversely a large portion of the same lands. And also the fact that part of the same lands were small islands, above ordinary high water mark, belonging to Taylor, and that another part had been filled in and used for dockage and wharfage. That the defendants, upon their application, furnished the land commissioners a fraudulent map, falsely suggesting some, and concealing other material facts in regard to land in the patent and the adjoining shores. That the map did not fully and fairly show the lands patented, and adjacent shores, islands and waters. That it shows the general course of the East river, different from what it is in reality. That it represented an island of Taylor's as marsh, and concealed the fact that the defendant's land adjacent to the inlet was of the same kind. That it represented a portion of shore marked D, when in fact there was no such piece of land. That it concealed another island of Taylor's, which, with the other island forms the whole eastern front of the inlet. That the defendants represented they owned the lands under the water in the creek, whereas they belonged to Taylor. That letters patent were issued in ignorance of material facts, or through mistake on the part of the commissioners. That they were ignorant in fact, that the legislature had by acts granted to Dubois and others, a part of the same lands. And also, that the patent covered a portion of lands reclaimed from the water, and another portion within former legislative grants. Also, that premises conveyed to the town by Governor Dongan, in 1687, and by the town to Taylor, covered a portion of the same lands. Also, that part of the lands granted were upland, and that there

The People *v.* Schermerhorn.

were other proprietors than the defendants of the lands adjacent. The attorney general further stated that the grant extended beyond the permanent exterior water lines. That a part of the lands granted lay in the city and county of New York, and no notice of the application was published there. The complaint alleged that there were various other fraudulent suggestions and concealments ; and asked that the patent be annulled and vacated, with costs. It was further alleged, that subsequently the commissioners having become satisfied that in making grants to the defendants, injustice had been done the relators, they granted the relators a portion of the same lands so granted to the defendants.

The answer alleged that on February 10th, 1851, certain lands under the navigable waters of this state, and in the East river and Bushwick creek, were by letters patent granted to the defendants. That such patent was not obtained by fraudulent suggestions or concealments of material facts. That on the application to the commissioners the defendants did not conceal from them that the relators held a grant of the lands applied for. And did not fraudulently or otherwise conceal that Dubois had erected a bulk-head on the same lands. Or that the relators claimed adversely a portion of the same lands. Or that part of the same lands were small islands above ordinary high water mark, and belonged to Taylor. Or that part of the same lands were filled in and used for dockage. That the defendants did not furnish the commissioners a fraudulent map ; and the defendants referred to the map so presented, and averred that it fairly and fully showed the lands patented, and the adjacent shores and islands. That such map correctly showed the general course of the East river ; that the island thereon was composed of marsh or sedge and did not belong to Taylor. That part of the defendants' lands shown thereon was marsh or sedge, and a large part firm and hard upland ; that said map did not conceal the facts, or the character of the defendants' lands. That the two islands or marshes mentioned in the complaint as belonging to Taylor, did not occupy any part of the inlets front; did not belong to him, and were distant from the creek's mouth. That the map did not conceal or omit any fact or thing necessary

to have been known by the commissioners. That on the application the defendants did not represent themselves as owners of the lands under water in the creek; but they applied for a grant because said lands belonged to the people of this state. That such lands did not then, and do not now, belong to said Taylor, nor has he any right therein. That such letters patent were not issued through mistake, or in ignorance of material facts on the part of the commissioners. That on April 22nd, 1835, May 9th, 1837, and April 10th, 1849, certain acts were passed by the legislature; yet, with a full knowledge thereof, the defendants denied that prior to the application any part of the lands patented had been granted to Dubois or any person; that the lands in the patent did not include lands reclaimed from the water by the relators, or either of them. ·That the commissioners were · not ignorant in fact of the passage of said acts. That the lands in the patent were not embraced in the ancient grant of Governor Dongan to the town of Bushwick, or by the town conveyed to Taylor. ·That Governor Dongan was never authorized to convey the lands under such water to said town, and said town was never seised or possessed of any right thereto. That the lands in the patent, when applied for, were not above water at ordinary high tides; except a bulk-head erected partly thereon, not by the relators, but by Cunningham, Williams & Sneden, but which was not so erected to exclude or· conclude the rights of the defendants. That on the application the ·commissioners were informed that there were proprietors of the adjacent lands, and the map produced showed truly their names. That the defendants' grant did not extend beyond the exterior water line of the town of· Bushwick; but did extend beyond the exterior water line of Williamsburgh. That there was no exterior water line in front of the defendant's lands except the one established by the act of April 10th, 1849. That the lands patented do not lie in the city of New York, and no publication of notice of application was necessary to be made in such city. That the defendants did not on the application make fraudulent suggestions or concealments of material facts, and no person acting for them connived at or assented thereto. That in July 1852, the rela-

tors applied to the commissioners for a grant of lands claimed
to lie under water, in front of the relator's upland; that six
commissioners heard the application and objections; that with-
out any report on titles, &c. according to the practice of the
board, subsequently, four of the commissioners signed and en-
tered on the minutes a certain resolution of which a copy was
annexed marked B. This resolution recited that whereas the
commissioners of the land office, after careful investigation, had
become satisfied that in grants theretofore made to Sneden &
Williams, and Schermerhorn & Banker, injustice had been done
to Cornelius Dubois, Samuel J. Hunt, and James B. Taylor, and
believing that an ultimate division of the water-front on Bush-
wick creek could not be equitably made without placing the sev-
eral parties in interest on an equal footing. It was therefore
resolved, that patents be issued to Dubois, Hunt and Taylor,
respectively, for grants in perpetuity, to them, their heirs and
assigns, for all the land gained from the water, and all the land
under water, lying in the East river, at the mouth of Bushwick
inlet, which is embraced within certain specified bounds. .

The answer alleged that such resolution was not passed by the
commissioners while sitting as a board, in the manner required
by law. But that after it was drawn, was carried around by
Taylor, for the relators, and the signatures of the four commis-
sioners in that manner obtained thereto and not otherwise. That
therefore said resolution was invalid and was not passed and
adopted by the commissioners of the land office. That apart
from the resolution the defendants had no knowledge, whether
the commissioners made any investigation of the facts upon such
application or became satisfied that injustice had been done the
relators in making the grant to the defendants. That by reason
of such resolution, on October 14th, 1851, letters patent of lands
under such waters were granted to the relators, copies where-
of were annexed marked schedules C, D, and E. That the let-
ters patent last mentioned conflict with each other and with the
patent to the defendants. That within their bounds were lands
claimed from the water, bulk-heads and lands above ordinary
high tides, and also lands in which the state had then no right,

title or interest. That all the facts connected with the grant to the defendants were as follows: That on January 18th, 1851, a petition, of which a copy was annexed marked F, was presented to the commissioners, asking for a grant of lands under water, in front of the defendants' upland. That previous notice of such application had been duly published as required by law, and due proof thereof was produced to the commissioners' satisfaction. That a map of the defendants' upland and land under water in front, made by D. Ewen, city surveyor, was presented, but on being found not to comply in a few minor particulars with the commissioners' printed rules and regulations, an adjournment was had; and on the adjourned day a new map, made in strict accordance with such printed rules and regulations, was produced, verified by the oath of said Daniel Ewen, and accompanied by an affidavit of the Kings county judge, showing that a grant of the land applied for was necessary for the beneficial enjoyment by the defendants of their adjacent upland. That thereupon the commissioners carefully examined the last map and petition and papers produced, and decided that a grant should issue as prayed for, of the lands shown on the map, with this variation, viz: That instead of the grant extending into the East river at right angles with its course, and as prayed for and shown on the map, it should run at right angles with the permanent water line of Bushwick as established by law by the act of April 10th, 1849; and the state engineer was directed to make a new map in conformity with such decision. The new map having been so made, and the attorney general having reported favorably upon the title of the defendants and that a grant should issue to them, letters patent were directed to issue. That while letters patent were being drawn, it was for the first time discovered that Cunningham, Williams and Sneden, by N. Hill Jr., their counsel, had filed objections thereto. That a day for hearing was fixed, at which an argument by counsel on each side, and for several hours, was heard by the commissioners, and on which the opposing counsel read and filed an affidavit, of which a copy was annexed, marked K. That during the argument, reference was frequently made to the acts passed May 9th, 1837,

The People *v.* Schermerhorn.

and April 10th, 1849; and N. Hill, Jr., as counsel opposing, also stated that the lands applied for were not only lands reclaimed from the water, and above ordinary high tides, but were also lands on which Cunningham, Williams and Sneden had, under the act of April 10th, 1849, erected docks and wharves. The counsel claiming that said lands had been granted them by said act. That subsequently and on mature deliberation, the commissioners adopted a resolution directing a patent to issue to the relators, of which a certified copy was annexed, marked L. That pursuant thereto, the letters patent to the defendants were issued. That they were not issued through fraud, fraudulent suggestions or concealment of facts, or upon any mistake of facts; but on the contrary, were duly and fairly issued after argument, after full and fair statement of all the facts relating thereto, and after mature deliberation by the commissioners. That after the patent was issued, Taylor obtained from the town of Bushwick a pretended conveyance of a piece of marsh or sedge within said creek, and claimed by him to be an island. And also a pretended conveyance of the soil of the creek in front of the defendants' upland. That at the time of the grant to the defendants, Taylor had no title or interest, and had not now any title or interest to any lands under the waters of the said creek, or at the mouth of said creek, or fronting on said East river.

The reply alleged that the resolution of the commissioners, dated October 24th, 1852, (schedule B) was the result of deliberations while they were sitting as a board; and while so sitting, they determined that patents should issue to the relators, and a resolution to that effect was subsequently drawn up and approved, as evidenced by the signatures attached, was entered on their minutes by their secretary, and afterwards at sundry meetings of the boards, made known to and approved by them.

The plaintiffs denied any knowledge or information sufficient to form a belief, whether such resolution was or was not adopted without any report on the titles of the relators by the attorney general, according to the course and practice of the commissioners; and they further denied, that the letters patent to the relators would be in any manner affected by such an omission.

The plaintiffs averred their belief that Governor Dongan was authorized to grant to the town of Bushwick the lands mentioned in the complaint; and that the town was seised of the lands by virtue of such grant.

The cause was tried at the Kings circuit in February, 1853, before Judge BARCULO, without a jury. At the close of the testimony the justice found and determined as follows : *First.* That the letters patent, issued to the defendants, on the 10th day of February, 1851, were not obtained by fraudulent suggestions, representations, or concealment of facts. *Secondly.* That said letters patent were issued in ignorance of material facts, viz : That portions of the land covered by the grant had been already occupied and improved. *Thirdly.* That all that portion of the lands conveyed by the letters patent, lying below high water mark, was within the city and county of New York, and that no notice of the application for said letters patent was given in said county, as required by the statute. *Fourthly.* That the lands granted by said letters patent, were not adjacent to the lands of the defendants, within the true meaning of the statute. *Fifthly.* That the grant to the defendants was made upon incorrect principles, in this, to wit ; that the grant made was not by lines run at right angles to the general course of the East river. *Sixthly.* That the grant to the defendants covered portions of lands held by others, under former laws and grants. *Seventhly.* That the acts passed April 22, 1835, May 9, 1837, and April 10, 1850, were all constitutional and valid. *Eighthly.* That the plaintiffs were entitled to judgment in this action. To all of these decisions, except the first, the counsel for the defendants excepted.

*O. Hoffman,* attorney general, and *E. S. Van Winkle,* for the plaintiffs. I. The decision of the judge below must be sustained, because in truth and in fact the letters patent, issued to the defendants, were issued in ignorance of material facts. (*Code,* § 483.) One material fact of which the commissioners of the land office were ignorant was the fact, that portions of the land covered by the grant had been already occupied and improved.

The People *v.* Schermerhorn.

This was a question of fact found by the court and will not be disturbed, except where in a like manner the verdict of a jury would be set aside, as being contrary to the clear weight of evidence. Ignorance on the part of the commissioners of this improvement, abundantly appears by the case. The commissioners inadvertedly issued the patent covering lands within the city of New York. This was by mistake. They did not know of, or remember, the prior grants by the legislature.

II. The decision of the judge below was correct for this reason also ; that part of the lands applied for were within the city and county of New York, and no notice of the application for said letters patent was given in said county, as required by the statute. (1 *R. S.* 208, § 70, 80.) As to the boundaries of New York city and county, see 3 *R. S. 1st ed. p.* 2, 3, *or 4th ed. vol.* 1, *p.* 2. This omission was fatal and incurable. The commissioners had no jurisdiction. (*Bloom* v. *Burdick,* 1 *Hill,* 130. *Denning* v. *Corwin,* 11 *Wend.* 647. *Sharp* v. *Speir,* 4 *Hill,* 76. *Sharp* v. *Johnson, Id.* 92. *U. S.* v. *Wyngall,* 5 *id.* 16. *Doughty* v. *Hope,* 3 *Denio,* 594, 597.) It makes no difference that the judge, in his opinion, uses the word "high" instead of "low," as the court can see by an inspection of the case that the grant extended below low. water mark. Besides, the court can affirm the judgment of the court below, and assign the true reason.

III. The decision of the judge below was correct, because the lands granted by said letters patent are not adjacent to the lands of the defendants within the true meaning of the statutes. (*Act of April* 10, 1850. § 1, *Laws of* 1850, *p.* 621.) This act says no grant shall be made to any person other than the proprietor of the adjacent lands ; and any such grant that shall be made to any other person shall be void. The revised statutes use the same language. (1 *R. S.* 208, § 208, §§ 67, 77.) The word " adjacent," must have a reasonable construction ; it means adjacent, in the rear of the land granted. As this grant, in some part of it at least, was made to others than the owners of the adjacent lands, it is void. With respect to Taylor's land, no part of the grant is good. With respect

to Dubois and Hunt, the greater part of the grant is void. The grant is indivisible in this point of view ; and, if any part of it is void, the whole is void.

IV. The grant to the defendants the judge held to be void for this good reason also ; that it was made on incorrect principles, not being made by lines run at right angles to the general course of the East river. (*See Angell on Water Courses, Alluvium,* 48 *to* 52. *Angell on Tide Waters, title Wharves.*)

V. The grant to the defendants covers portions of lands held by others under former laws and grants, and the decision of the judge was therefore correct. (*See act of April* 22, 1835, *Laws of* 1835, *p.* 123. *See act of May* 9, 1837, *Laws of* 1837, *p.* 407. *See maps. Grant* v. *Lawton,* 10 *John.* 23.)

VI. The acts of April 22, 1835, and May 9, 1837, are constitutional and valid. The objection to the constitutionality of these acts is based on the 9th section of the 7th article of the constitution of 1822, and on the 9th section of the first article of the constitution of 1846, which declare that the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes. The prior constitution contained no such clause. That acts similar to the two in question have not been considered as falling within this restriction, is evident by the course of the legislature ever since 1822, in not requiring a two-third vote. These grants, whether made by the legislature or the commissioners of the land office, are made upon public grounds, viz : to promote the commerce of the state. (*Act of April* 6, 1813, 1 *R. L.* 292, § 4. *Act of April* 14, 1815, *p.* 201. 1 *R. S.* 208, § 67. *Act of* 1835, *ch.* 232, *p.* 276.) A uniform course of action involving the right to an exercise of an important power by the state government for half a century nearly, and this without question, is no unsatisfactory evidence that the power is rightly exercised. (*Brisco* v. *Bank of Com. of Kentucky,* 11 *Peters,* 257.) Again, there is nothing inconsistent in the passage of such acts by a bare majority, with the constitutional provision requiring two-thirds to the passage of acts appropriating public property for private purposes.

The People v. Schermerhorn.

Docks and wharves are public objects, although private individuals may reap advantages from them. So as to mills. States will exercise their right of eminent domain in favor of mills built and owned by private individuals, on the ground of public necessity or advantage. (*See Angell on Water Courses*, p. 517, § 487.) It is a *sale* of a right for a consideration. So as to public roads, ferries, rail roads, &c. (2 *Kent's Com. 5th ed.* 338, 340, note. *See Const. art.* 1, § 6.) *Beekman* v. *Saratoga and Sche. R. R. Co.* 3 *Paige*, 45. *Bloodgood* v. *Mohawk and Hudson R. R. Co.*, 14 *Wend.* 54 ; *S. S.* 18 *id.* 13, 21, 23, 78.) It is settled that under the constitution the legislature cannot take the property of one person and transfer it to another, even for a full compensation, when the public interest will not be promoted thereby. (*Beekman* v. *Sar. and Schen. R. R. Co.*, 3 *Paige*, 45. *Matter of Albany street*, 11 *Wend.* 149. *Varick* v. *Smith*, 5 *Paige*, 137. *Matter of John and Cherry streets*, 19 *Wend.* 659. *Taylor* v. *Porter*, 4 *Hill*, 140.) They may take only for public purposes. This supports all laws for ferries, rail roads &c., and *docks*. In *Drake* v. *Hudson R. R. R. Co.*, (7 *Barb.* 508,) it is decided if the fee of the street be in the adjoining owners subject to the public easement, the locating and use of a rail road track in the street is at most an injury to, and not a taking of private property within the constitutional provision. (*See Const. art.* 7, § 7.) An act providing for the taking of state lands contiguous to the salt springs, for the purpose of constructing a rail road, is not a sale and disposition of them, within the prohibition of that section. (*Parmelee* v. *Oswego and Syracuse R. R. Co.*, 7 *Barb.* 599, 623.) But the act of April, 1850, is unconstitutional and void.

*S. Beardsley* and *Henry Hilton*, for the defendants. I. The letters patent to the defendants were not obtained by any fraudulent suggestions, representations or concealment of facts.

II. Said letters patent were not issued in ignorance of any material fact. (*Code*, 1851, § 433, *sub.* 2.) (1.) We insist that no part of the land covered by said letters patent had been previously " occupied and improved." (2.) But if one of the lines

of said patent crosses a corner of the wharf erected by the plaintiff Dubois, under the act of 1837, the fact is not material, and furnishes no ground for canceling said patent. (3.) We also insist that no part of the lands embraced in this patent lie within the city and county of New York, and therefore no notice of the application for said grant was required to be given in New York. (3 *R. S.* 2, 121, 18, § 4, 7. *Laws* 1835, *p.* 123, § 5. *Id.* 1837, *p.* 407, § 1. *Id.* 1849, *p.* 434, § 4. *Id.* 1850, *p.* 621. *Stryker* v. *Mayor &c. of N. Y.,* 19 *John.* 179. *Udall* v. *The Trustees of Brooklyn, Id.* 175. *The People* v. *Lambier,* 5 *Denio.* 9. *L. of* 1835, *p.* 276. 1 *R. S.* 208, § 70.) 1 R. S. (4th ed.) 451, contains all the amendments to the original powers of commissioners of the land office. (*Palmer* v. *Hicks,* 6 *John.* 133.) (4.) Even if part of the lands patented are within the city of New York, the patent is not void, although notice was not published there. Notice was given in Kings, where most of the lands lie; the commissioners of the land office, therefore, clearly had jurisdiction to that extent, and so far there is no pretense of irregularity. To that extent the patent is certainly valid. But if no notice had been given any where, that would not make the patent void; the commissioners had jurisdiction to direct a grant, and the 'governor to make it, and the want of notice is at best but an irregularity. The statute is directory. (*In the matter of Mt. Morris Square,* 2 *Hill,* 14, 23. 3 *Bl.* 73. *The Duke, &c.* v. *Clark,* 8 *Taunt.* 603. *Striker* v. *Kelly,* 7 *Hill,* 9, 24. 2 *Denio,* 323, 331. *Wiggin* v. *The Mayor of N. Y.,* 9 *Paige,* 16, 24.) (5.) The question of *due notice,* if material to the validity of a patent, is for the commissioners to decide; and here they decided that due notice had been given. (*Gallatian* v. *Cunningham,* 8 *Cowen,* 370, 369, *Harman* v. *Brotherson,* 1 *Denio,* 537.) (6.) We also insist that the lands granted were, within the true meaning of the statute, *adjacent* to the lands of the defendants, although as this objection is not made in the complaint, we suppose it cannot be made here. (1 *R. S.* 208, § 67. *Laws* 1835, *p.* 276. *Id.* 1850, *p.* 621. *Kelsey* v. *Western,* 2 *Comst.* 500.) (7.) The fact that said patent covers portions of land which the acts of 1835 and 1837 assumed to authorize others to occupy,

The People *v.* Schermerhorn.

furnishes no ground for annulling said patent. (*Laws of* 1835, *p.* 123. *Id.* 1837, *p.* 407.) Neither of these acts is shown, by the certificates of presiding officers of the senate and assembly, or in any other way, to have been passed by a two-third vote : it must, therefore, be taken that they were passed by majority votes only. (1 *R. S.* 156, § 3. *Laws* 1842, *p.* 392.) But they were acts which assumed to appropriate the public property for local and private purposes, and, not being passed by two-thirds of the members elected to each house, were invalid. (*Const. of* 1821, *art.* 7, § 9. 1 *R. S.* 53.) If these acts could be regarded as mere licenses to use the lands under water therein designated, they are in their nature revocable, and, as to the lands granted to the defendants, said licenses were revoked by said letters patent. When said act of 1835 was passed, the commissioners of the land office were not authorized to grant any lands under the waters surrounding Long Island. (1 *R. S.* 209, §§ 67–69.) But they were subsequently authorized to make such grants, and when they made the grant to these defendants it operated as a revocation of the prior licenses under the acts of 1835 and 1837. (*Laws of* 1835, *p.* 276. *Act of May* 6, 1835. *Id.* 1850, *p.* 621. *Rundle* v. *Delaware & Rar. Canal Co.* 14 *How. R.* 80.) If the patent to the defendants covered some lands already granted by the state, &c. that would not avoid the patent in toto ; it might be valid as to the land not previously granted, &c. though invalid as to the residue. (*Danforth* v. *Wear*, 9 *Wheat.* 673. *Patterson* v. *Jenks*, 2 *Peters*, 235. *Winn* v. *Patterson*, 9 *id.* 663.) It was not shown on the trial that said letters patent were made in ignorance of the acts of 1835 and 1837.

III. The principle that the patent should be bounded by lines at right angles with the permanent water line in front, and not at right angles with the general course of the East river, was correct. But the objection, as stated by his honor the judge, was not made in the complaint, and therefore cannot be made here. (*Laws of* 1845, *p.* 123, 276. *Id.* 1837, *p.* 407. *Id.* 1849, *p.* 434. *Id.* 1850, *p.* 621. 1 *R. S.* 208. § 67.)

IV. Improper evidence was received by the judge.

V. No ground for vacating said letters patent was shown, and there should be judgment for the defendants, or a new trial.

*By the Court*, S. B. STRONG, J.   The patent to the defendants is for lands covered with water in Bushwick creek, adjacent to their upland on the northerly side of it, and extending in front of the creek, into the East river, to the permanent water line of Greenpoint, established in 1849.   The principal objections to the patent which I deem it necessary to consider, are that the lands in the *creek* were private property, and that the commissioners of the land office transcended the power conferred upon them by the statute in extending the grant to lands in the *East river.*

The plaintiffs allege that the lands in Bushwick creek were granted to the inhabitants of the town of Bushwick under the patent from Governor Dongan, dated in February, 1687, and that they were subsequently conveyed by the proper officers of that town to the plaintiff Taylor.   The defendants contend that the colonial governor had no power to make a valid grant of land covered by navigable waters.   As the tide ebbs and flows in the creek, it must be considered as navigable, within the technical meaning of that term.   The question as to the validity of such grants has been discussed before this court in several cases, and they have been uniformly sustained. (*Gould* v. *James*, 6 *Cowen*, 369.   *Rogers* v. *Jones*, 1 *Wend.* 237.) The argument against the power, in *Rogers* v. *Jones*, was very elaborate and able, and the case was well considered.   The patent was issued by Governor Andros to the inhabitants of the town of Oysterbay, and the operative words, and the description of the subjects granted, corresponded with the phraseology of the patent to the town of Bushwick.   The court recognize the principle, that the king of England was originally the proprietor of the soil under navigable waters ; that his title extended to the province of New York ; that he had power to grant such title to a subject; that the power was delegated to the colonial governor, as the immediate representative of his sovereign ;   and that the patent in that case constituted the lands

under the water of the bay the property of the town. That case has been acquiesced in and considered as settling the law from the time when it was decided, (August, 1828,) to the present day. It is of very extensive application on Long Island, and to repudiate its authority now would invalidate numerous titles acquired under its sanction, and cause great confusion and some hardship. In the case under consideration the exterior lines included the whole of Bushwick creek. The boundary line from the interior strikes the East river at a point some distance south from the creek, and it then "runs along the river to the Norman's [Bushwick] creek, and further the Norman's corner and David Yeokin's corner, stretching by the East river along to the corner of Maspeth Hills," [Newtown creek.] It grants to the persons named, the then "freeholders and inhabitants of the town, and their heirs, survivors and assigns," the entire tract of land described, with all and singular the *creeks,* harbors, rivers, rivulets, runs, brooks and streams within the described limits. The terms used were broad enough to pass the title to the lands covered with water in Bushwick creek.

The patentees named had undoubtedly the capacity to take the title in their own right. The object of the patent, however, was to confer the estate upon the town. That was not incorporated in direct terms. But the conveyance of lands by the sovereign authority invests the grantees with the requisite power to take and hold them. If it is to a body of men under a general description it creates at least a quasi corporation. (*Goodell* v. *Jackson,* 20 *John.* 706. *Johnson* v. *Lervey,* 5 *Cowen,* 397. *North Hempstead* v. *Hempstead,* 2 *Wend.* 109.) The case last cited was decided by the court for the correction of errors, and is conclusive as to the capacity of the patentees to take the title. In that case Chief Justice Savage, who gave the only written opinion, said "The truth no doubt is that towns are corporations in a certain degree, and so far as corporate powers are granted or are incidental to express grants, towns possess such powers; and particularly in the case now under consideration, it seems to me that corporate powers to the extent expressed were intended to be conferred." An act passed by the colonial

legislature in 1691, confirmed the patents and grants previously made to the towns in the province, and gave to them the capacity to take, hold and convey real estate, if they had it not before.

I am satisfied that the patent from Governor Dongan and the prior grants which it recites and confirms, vested in the town of Bushwick, as a corporation, the title to the land under water in Bushwick creek, comprehended in the grant from the commissioners of the land office to the defendants, and that so far that grant is void. The acts of our legislature authorizing the grants of land under navigable . waters in and around Long Island, (1 *R. S.* 208, *and Statutes of* 1850, *ch.* 283, *p.* 621,) can refer only to public property. They were not designed to, nor could they, confer the power to grant the lands of individuals or corporations to others, and particularly without compensation. It is not to be supposed that the commssioners would have made the grant if they had known that the land belonged to the town; and it is plainly inferrible that the letters patent to the defendants were issued through mistake, and in ignorance of a material fact, and that is a valid cause for annulling them at least to the extent of the mistake. The grant to the defendants did not of itself constitute them adverse holders of the land, so as to avoid the subsequent grant to Taylor. In the absence of any possessory acts, and none such were proved, the possession follows the title. I see no objection to the conveyance to Taylor of the land in Bushwick creek, although it is not necessary to pass upon the validity of his claim, as the grant to the defendants would be void whether the title is in him or in the town.

Then as the grant to the defendants of the lands under water in the East river. The act of April 10th, 1850, § 13,(a) prohibits a grant to any person other than the proprietor of the adjacent land, and declares that any such grant made to any other person shall be void. The interpretations given to the word "adjacent," by Walker, "are lying close," "bordering upon something." The legislature evidently intended to restrict the grant to the owners of the lands bordering upon, or adjoining,

(a) Laws of 1850, p. 621.

The People *v.* Schermerhorn.

the water covering the subject of the proposed patent. In no other way can the privileges reserved to each proprietor, of holding his land adjoining navigable waters free from obstructions by others, and of obtaining a patent for the adjacent land, should any be issued, be maintained. Possibly (according to some late decisions) the legislature might have authorized such grants to other than the riparian proprietors. But it has not done that, and so long as the statute exits these privileges must continue. If the patentee must be confined to the land opposite to his own, the lateral limits must be perpendicular to the shore, not to so much of it only as adjoins the subject of the grant, but to its general course ; otherwise where the shore is irregular and crooked, the grants to which adjoining owners would be entitled (should any be made) might conflict with each other, and there would be no principle upon which the controversies could be settled. There might, it is true, be some difficulty in ascertaining the course of the shore of a river or the ocean, unless the doctrine should be limited, but there is no other rule which would do justice to all parties ; and although it may at times be of difficult application, it must be sustained.

It appears from the maps produced by both parties that the defendants' land comes to a point, on the East river. It has no extent adjacent to the water. According to the principle which I conceive to be applicable to such cases, they cannot be entitled to a patent for any thing but a perpendicular line into the river. Confessedly, the land at the outlet of the creek was not theirs, and their land on the margin of the creek was not "adjacent" to the East river, at least in the statutory sense of the term. The latter objection is not specified in the complaint, and probably if standing alone, it could not have prevailed, at least without an amendment. But the title resulting from the Dongan patent, is distinctly stated and urged as an objection to the grant to the defendants, and that presents an insuperable supervening obstacle.

A considerable portion of the land included in the patent to the defendants is below low water mark in the East river. That is in the county of New York, as the boundary of that county

contiguous to Long Island is at low water mark. The revised statutes require that an applicant for a grant of land under water shall previous to his application publish six weeks' notice of it in a newspaper printed *in the county in which the land is situated.* The defendants did not publish any notice of their application in a newspaper printed in the county of New York. So far as relates to the land situated in that county, the defendants failed to comply with a positive requisition of the statute. There is also a serious difficulty with the notice which they published in the county of Kings. It is for a different tract of land from that described in their patent. In the notice the land is bounded by lines in a perpendicular direction to the general course of the East river, the northerly boundary running north eighty-two degrees west, and the southerly boundary running south eighty-two degrees east: whereas in the patent those lines are described as running perpendicular to the permanent north line of Green Point, and north eighty-six degrees west, and the other south eighty-six degrees east. The patent is for land less extensive than that described in the notice; but whether it includes any lands beyond the limits specified in the notice, does not distinctly appear. Probably it does at the southwest corner on the water line. The patent might be valid if for land only described in the notice, although of less extent; but it would be otherwise if for land not included in the description in the notice, at least to the extent of the excess.

The counsel for the defendants contended, on the argument, that the provisions of the statute relative to the notice, were merely directory. Statutory requisitions are deemed directory only when they relate to some immaterial matter, where a compliance is a matter of convenience rather than of substance. In general, when a power to affect property is conferred upon those who have no personal interest in it, such power can be exercised only in the manner and under the circumstances specified in the instrument creating it. It must be strictly pursued. The commissioners of the land office have no authority to make grants of land under water, except what is conferred upon them by the statutes. Their jurisdiction is limited, not perhaps

The People *v.* Schermerhorn.

in the extent of the lands, but in the cases in which it can be exercised. The statute supposes that there may be objections to the application by the public or by individuals, and therefore very properly provides that preliminary notices shall be given. If such notices are requisite, there is a strong reason why they should be published in the manner specified in the statutes. That is reasonably supposed to be the most effectual for the designed purpose, and neither public officers nor individuals can be expected to look any further. I conceive that such preliminary notice as the statute directs is absolutely necessary to confer jurisdiction of any particular case on the commissioners, and that without it any grant by them would be void. The omission is by the party making the application, and not as in most of the instances where statutory provisions have been deemed simply directory by public officers ; and there can be no hardship in requiring one claiming under a statute, to conform to its directions, and particularly when the interests of others, such as contesting claimants or the owners of adjoining lands, may be seriously affected. ·

Although the limits of the county of New York extend to low water mark on Long Island, the corporation of the city has no title to the land under the water adjoining the shores of the island. Neither the patents to the city nor the statute dividing the state into counties, confer any title to such lands. The statute confers political jurisdiction upon the county, but not the property of the state in its sovereign capacity. That remains in the people. The territorial objection to the grant to the defendants is not that it interferes with the rights of property of the city or county of New York, but it is applicable only to the sufficiency of the notice.

Other questions of much importance were discussed on the argument, but it is not necessary to consider them. I am satisfied that the decisions of the learned judge on the points which I have discussed were right. They are sufficient to support his judgment, and it should be affirmed.

[KINGS GENERAL TERM, January 2, 1855. *S. B. Strong, Roosevelt* and *Dean,* Justices.]