## IN RE PETITION OF CLARENCE W. ASHFORD, FOR ADMISSION TO THE BAR.

SECTION 1,065 of the Civil Code prescribing that the Supreme Court shall have the power to admit as practitioners in the Courts such persons "being Hawaiian subjects," etc., etc., is not declaratory but mandatory upon the Court. The petitioner, being otherwise qualified, not having been naturalized as a Hawaiian citizen refused admission to the Bar. The provisions of the British Treaty with this Kingdom do not conflict with the above statute.

Opinion of the Court by JUDD, C. J.

In re Petition of Clarence W. Ashford for admission to the Bar.

The petitioner represents that he has pursued the prescribed course of legal study in the University of Michigan, U. S. A., from which institution he graduated in March, 1880; that he was soon after duly admitted to practice as an attorney and counsellor at law, and solicitor and counsellor in Chancery in the State of Michigan, and has practiced law for about one year at Lansing, Michigan, and on the 28th of August, 1882, he was admitted to practice in the Superior Court of California.

In compliance with rule 28 of this Court the petitioner presented a certificate of good moral character.

The certificates presented are satisfactory to the Court. But the Attorney General who was called in by the Court suggests, that it does not appear that the applicant is a Hawaiian subject, and the applicant at the hearing filed his affidavit that he was born in the Dominion of Canada, and is a British subject.

The law in reference to the admission of practitioners to the Bar, is Section 1,065 of the Civil Code which reads: "The Supreme Court shall have power to examine and admit as practitioners in the Courts of Record, such persons being Hawaiian subjects of good moral character, as said Court may find qualified for that purpose."

It is suggested by the Attorney General that the law casts upon the Court the duty of refusing to admit the petitioner to practice, he not being a Hawaiian subject. Until the Act of 1882, the naturalization of alien foreigners was an easy matter, it requiring from the applicant that he "state his intention to become a permanent resident of the Kingdom, and the Minister of the Interior in person, or through his chief clerk, was authorized to administer the oath of allegiance to such foreigner if satisfied that it will be for the good of the Kingdom, and that such foreigner is not of immoral character, nor a refugee from the justice of some other country, nor a deserting sailor, marine, soldier, or officer." Civil Code, Section 429.

In re Petition of Clarence W. Ashford for admission to the Bar.

Under this law all attorneys hitherto coming to this country from abroad became naturalized, the Court requiring without question from all alien foreign attorneys applying to be admitted that they exhibit to the Court their certificates of naturalization.

But, on the 27th July, 1882, an Act was passed by the Legislature of the Kingdom authorizing the " Minister of the Interior, with the approval of the King, upon the application of any alien foreigner who shall have resided within the Kingdom five years or more next preceding such application, stating his intention to become a permanent resident of the Kingdom, to administer the oath of allegiance to such foreigner, if satisfied that it will be for the good of the Kingdom ; and that such foreigner owns without encumbrance taxable real estate within the Kingdom, and is not of immoral character, nor a refugee from justice of some other country, nor a deserting sailor, marine, soldier, or officer."

Under this law it is manifest that the petitioner cannot become a subject of this Kingdom until he has completed the full term of five years' residence here, and is able to comply with the other requisites of the Act. It is urged by petitioner's counsel that this Act shuts off the Bar of this Court from being reinforced by attorneys from abroad, and thus there is created a monopoly in the present Bar of about a dozen members. This appears to be true, for it is quite unlikely that any attorney from abroad would consent to five years of inaction in this Kingdom in order to be entitled to practice in our Courts.

But the law is imperative ; none but Hawaiian subjects can be admitted to practice here, and we are not to construe an Act of the Legislature out of existence without good reasons thereof.

It is said that as this section (1,065) of the Code does not say that none but those who are Hawaiian subjects are to be admitted to practice, the Court is not thereby prohibited from

admitting others who are not subjects. This construction would make the provision we are considering meaningless. We regard these words " being Hawaiian subjects " as creating a condition precedent, and as imposing the limitation upon the general powers of the Court to admit practitioners—to admit none but subjects. We understand it to be universally the practice in other countries to admit as attorneys none but citizens ; and this has been the course followed in this country without question until the enactment of the law making naturalization difficult.

But it is said that this law is merely directory, and not mandatory. We do not so understand it. " Statutory requisitions are deemed directory only when they relate to some immaterial matter, where a compliance is a matter of convenience rather than of substance." People *vs.* Schermerhorn, 19 Barb., 558.

Judge Cooley says that the particular provisions of a statute are to be regarded as directory merely when they are considered as giving directions which ought to be followed, but not as limiting the power in respect to which the directions are given, so that it cannot be effectually exercised without observing them. Cooley Const. Lim., p. 74.

" There are cases where, whether a statute was to be regarded as merely directory or not was made to depend upon the employment or failing to employ negative words which imported that the act should be done in a particular manner or time, and not otherwise. The use of such words is often very conclusive of an intent to impose a limitation ; but their absence is by no means equally conclusive that the statute was not destined to be mandatory." Ib., p. 75 ; and Potter's Dwarris, pp. 321-327.

The provision we are now considering seems to us to be compulsory, and to leave no discretion in the Court. None of the adjudged cases we can find sustain a contrary view.

It is said that the acts referred to are an encroachment upon the judicial authority ; that the Court has an inherent

power to say who are suitable to be admitted to practice before it. While recognizing the force of this, it is also true that it is the duty of the Court to admit the binding force of a law restricting the practitioners, if reasonable ; and we cannot say that the restriction of the right to practice law in our Courts to subjects is unreasonable, however inconvenient it may be. The case would stand differently if, by the operation of Acts of the Legislature, unfit persons should be thrust into the Bar of the Court, or the Court and community altogether deprived of the advantage of a Bar of professional excellence. See matter of Goodell, 20 Am. Rep., 43.

Numerous references are made in argument to treaty stipulations—for example—Article 2 of the British Treaty—that a " British subject in this Kingdom shall enjoy the same exemptions and privileges as native subjects." From the context it is evident that this refers to privileges respecting residence and trade in this Kingdom and not to the privilege of practicing law. Also 8th article *Id.* where the right is guaranteed of free and open access to the Courts of Justice for the prosecution and defense of their just rights, and the liberty of employing in all causes the advocates, attorneys or agents of whatever description whom they think proper, etc. This secures the right to employ counsel, a right not recognized in ancient times, but we think it does not mean that any person not a licensed attorney can be forced upon the Court as a practitioner.

We are therefore obliged to hold that the petitioner not being a Hawaiian subject cannot be admitted to practice in this Court.

A. S. Hartwell for petitioner.

The Attorney General per contra.

Honolulu, March 21, 1883.