A. FRANCIS JUDD,
LAWRENCE McCULLY,
BENJ. H. AUSTIN.
</div>

Honolulu, May 20, 1884.

---

## ALIENS AND DENIZENS.

OPINION OF THE JUSTICES OF THE SUPREME COURT TO THE LEGISLATIVE ASSEMBLY OF 1884, AS TO THE ALLE- GIANCE OF ALIENS AND DENIZENS.

### MAY, 1884.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

An alien cannot hold an office of profit and emolument under the Government without taking the oath of allegiance.

An alien, to whom Letters Patent of Denization have been granted, has the status of a subject, and he need not take the oath of alle- giance as a requisite to holding a Government office.

*To the Honorable President of the Legislative Assembly:*

SIR : On the 15th May the Secretary of the Legislative Assem- bly transmitted to the Judges of the Supreme Court, for their opinion thereon, copies of two resolutions passed by your body. They are as follows :

1st. " WHEREAS, There are employed as Secretary in the Foreign Office and Board of Health two Secretaries, Mr. Webb and Mr. Parker, who have not taken the oath of allegiance, and who are drawing pay from the public treasury ; therefore be it

*Resolved*, That the Justices of the Supreme Court be requested to state their opinion whether the appointment and the drawing of pay by the two persons named is in accordance with the laws as they now exist."

2d. *" Resolved,* That the Justices of the Supreme Court be requested to express their opinion on the following question :

" Is it lawful for an alien, to whom letters patent of denization have been conferred, to be appointed to an office of profit or emolument under the Government of this Kingdom, without taking and subscribing the oath of allegiance in manner and form prescribed by Sections 430 and 431 of the Civil Code ?"

The question raised by the first resolution is whether an alien can legally fill the position of Secretary to the Minister of Foreign Affairs or of Secretary to the Board of Health.

Under the Statute of 1846, aliens were not eligible to any civil or military office in this Kingdom, created by the laws.    Vol. 1, Laws of 1846, p. 76.

This Act was repealed on the passage of the Civil Code in 1859, and, until 1876, aliens were eligible to office in this Kingdom, except in the particular cases where the law limited the appointment to citizens, as, for instance, Ministers to the King, or Governors, who must by Sec. 30 of the Civil Code be either " subjects or denizens."

An Act was passed in 1874 (Chap. XLII of the Session Laws of that year), entitled " An Act to provide for the taking of the oath of allegiance by persons in the employ of the Hawaiian Government."

The preamble is as follows :

" WHEREAS, It is expedient that all persons who may be appointed to places of profit or emolument under the Hawaiian Government should take the oath of allegiance, be it enacted by the King and the Legislative Assembly of the Hawaiian Islands, in the Legislature of the Kingdom assembled :

" SECTION 1. From and after the passage of this Act, every person who may be appointed to any office of profit or emolument under the Government of this Kingdom shall, before entering upon the duties of his office, take and subscribe the oath of allegiance in manner and form prescribed by Sections 430 and 431 of the Civil Code."

The second section prescribes that on the failure of an office holder to take the oath within three months after the passage of this Act, he shall be deemed to have resigned, and his office shall become vacant.

This Act applied to all officeholders, native-born citizens as well as aliens, and this may have given rise to the opinion, which we understand is entertained by some, that the oath of allegiance here required is an oath of office and not of naturalization.

Section 429 of the Civil Code authorized the Minister of the Interior, on the application of an alien foreigner, on the existence of certain requisites, to administer the oath of allegiance to him.

Section 430 reads as follows : " The oath of allegiance to be administered as aforesaid shall be as follows : .

" The undersigned, a native of...............................lately residing in.................................being duly sworn upon his oath, declares that he will support the Constitution and Laws of the Hawaiian Islands, and bear true allegiance to His Majesty ...................................the King.

"Subscribed and sworn to,"etc.

Section 431 merely prescribes that the oath shall be subscribed by the person *so naturalized,* and sworn to in the form most obligatory upon his conscience, and the jurat thereof is to be subscribed by the Minister of the Interior or his Chief Clerk.

The latter clause of the next section, 432, says that "every foreigner so *naturalized* shall be entitled to all the rights, privileges and immunities of a Hawaiian subject."

It is therefore evident that the above-recited oath cannot be considered as an oath of office, but it is the oath of allegiance, the taking of which naturalizes the alien and admits him to Hawaiian citizenship.

It is too clear to admit of discussion that a native-born citizen is not required to take an oath of allegiance. The Legislature of 1876, by Chapter VIII of the Acts of that year, probably to cure the defect in the Act of 1874, amended the law, so that it now reads : "From and after the passage of this Act, *every person of foreign birth* who may be appointed to any office of profit or emolument under the Government of this Kingdom, shall, before entering upon the duties of his office, take and subscribe the oath of allegiance in manner and form prescribed by Sections 430 and 431 of the Civil Code." This law is now in force.

It will be seen that the Act does not say that *no alien* shall be

21

*appointed* to any office of profit under the Government, or that aliens are ineligible to office, but it commands, as a condition precedent to his entering upon the duties of any office of profit or emolument under the Government, that he take the oath of allegiance, which, as we have seen above, means that he be naturalized.

It is not to be presumed that a person would be allowed to draw the pay of an office unless he undertook to perform its duties.

We have no doubt that the law requires all persons of foreign birth, in order to enable them to hold offices of profit or emolument under the Hawaiian Government, to be naturalized, except in the instances hereinafter mentioned.

It may be urged that the law is not mandatory, but merely directory.

This Court has had occasion to consider a similar question on the application of Mr. Ashford to be admitted to practice law. (4 Hawn., 614). The law authorized the Court to admit as practitioners such persons, "*being Hawaiian subjects* of good moral character, as the Court may find qualified for that purpose." We held that the law was imperative and mandatory to admit to practice none but Hawaiian subjects. "The provisions of a statute are to be regarded as directory merely when they are considered as giving directions which ought to be followed, but not as limiting the power in respect to which the directions are given, so that they cannot be effectually exercised without observing them."

Cooley's Const. Limitations, 74.

In the case of *The People vs. Schermerhorn*, 19 Barb., 558, it was held that "statutory requisitions are deemed directory only when they relate to some immaterial matter where a compliance is a matter of convenience rather than of substance."

To illustrate what a directory statute is: "It has been held that where a statute specifies the time within which a public officer is to perform an act regarding the rights and duties of others, it will be considered as directory merely, unless the nature of the act to be performed or the language of the statute shows that the designation of the time was intended as a limitation of power."

*People vs. Allen*, 6 Wendell, 487; *Jackson vs. Young*, 5 Cowen, 269.

Lord Mansfield's rule is that whether the statute is mandatory or not depends upon whether the thing directed to be done is the *essence* of the thing required. Burrows, 447.

The law now under discussion plainly requires, in our opinion, that the appointee to an office of profit under this Government shall not be an alien.

Whether any given employment under Government is or is not an "office of profit or emolument" would depend upon circumstances. The office of Secretary of the Board of Health is created by law. See Chapter XI of the Laws of 1876, where the Board of Health " is authorized to employ a Secretary, medical practitioners and agents, who shall receive such compensation for their services as shall be approved by a majority of the Board at a regularly convened business meeting thereof, said compensation to be paid out of any funds available to the Board by legislative appropriation."

We consider the position of Secretary to the Board of Health to be an office of profit or emolument under the Government and that it comes within the purview of the Act of 1876, Chapter VIII.

As regards the Secretary to the Minister of Foreign Affairs, we fail to find any statute creating the office or referring to it in any manner. But the Legislature, in voting a salary for such an officer, has considered such an official necessary, and has recognized it as an "office." We have no doubt that this office also is one of profit or emolument under the Hawaiian Government, and that Chap. VIII. of the Act of 1876, above discussed, applies to the appointee to this office.

But it may be said that the Act of 1882 (Chap. XVIII.), amending Sections 428 and 429 of the Civil Code, has so enlarged the requisites for naturalization as to make naturalization in many cases impossible. This Act requires of the person wishing to be naturalized, (1) the approval of the King, (2) that he shall have resided within the Kingdom five years or more next preceding his application, (3) that he own taxable real estate within this Kingdom free from encumbrance, (4) that he be not of immoral character, (5) that he be not a refugee from the justice of some other country, (6) that he be not a deserting sailor, marine, soldier or officer, and (7) that the Minister of the Interior be satisfied

that the applicant's admission to naturalization will be for the good of the country.

That the law is illiberal, considering that this Kingdom desires population, and invites and encourages immigration, is manifest. But it is a sufficient answer to say that it is the law of this country at present.

This leads us to the discussion of the second resolution, whether it is lawful to appoint an alien, upon whom letters patent of denization have been conferred, to an office of profit or emolument under the Government of this Kingdom, without taking the oath of allegiance.

Section 433 of the Civil Code is the entire authority for the conferring of letters patent of denization. It reads as follows :

"It shall be competent for His Majesty to confer upon any alien resident abroad, or temporarily resident in this Kingdom, letters patent of denization, conferring upon such alien, without abjuration of allegiance, all the rights, privileges and immunities of a native. Said letters patent shall render the denizen in all respects accountable to the laws of this Kingdom, and impose upon him the like fealty to the King as if he had been naturalized as heieinbefore provided."

It will be seen that a denizen is by the letters patent expressly endowed with "all the rights, privileges and immunities" of a *native*, and this is precisely the language used as to the effect of naturalization. Letters of denization have always been considered to be a substitute for the oath of allegiance by which, as a special favor, the privileges of Hawaiian citizenship are granted without prejudice to the status of the denizen as a citizen or subject of a foreign state. If they do not have this effect, and therefore dispense with the necessity of taking the oath of allegiance, it is difficult to see why they should be asked for or accepted.

As we have above seen, one of these rights or privileges is that of appointment to public office without the necessity of taking the oath of allegiance.

We are of the opinion that letters patent of denization from the King, conferring upon an alien, without abjuration of allegiance, all the rights, privileges and immunities of a native, place the recipient in the status of a subject, and it is therefore

not requisite that he take the oath of allegiance as a condition of his holding an office of profit or emolument under this Government. Such was the view of the authorities of this Kingdom from early times. For the honored W. L. Lee, the first Chief Justice of this Court, was a denizen. His letters patent, dated 1st of December, 1846, are in the archives of the Court. Respectfully submitted.

A. FRANCIS JUDD,
LAWRENCE McCULLY,