PEOPLE v. PAGE.

(Supreme Court, Appellate Division, Third Department. March 14, 1899.)

1. NAVIGABLE WATERS—TITLE TO BED—COLONIAL GRANT.
    A colonial grant was of land along both sides of the Hudson [Mohawk] river, and extending from each side backward into the woods 24 miles, and all the islands, rivers, and creeks appertaining thereto, and was in confirmation of a former Dutch grant, which, under the Dutch law, would not vest title to land under public streams. Held, that this did not carry title to the bed of the river as against the state, it being navigable at that point.

2. SAME—LAND COMMISSIONERS.
    Laws 1894, c. 317, § 70, subd. 5, permitting commissioners of the land office to authorize the use of lands of the state under water for certain purposes therein stated, did not permit them to authorize the construction of a permanent dam in a navigable stream.

3. SAME.
    The fact that the use of a navigable stream for commerce or navigation is insignificant does not destroy the state's proprietary rights, nor authorize its appropriation for individual use.

4. SAME—PRESCRIPTION—AMENDMENT AFTER TRIAL.
    Where the evidence showed that, 50 years before, a dam had been maintained for a few years in a public stream, but not that one had been maintained continuously for 40 years, a motion by defendant, made after trial in a suit to enjoin him from maintaining a dam in such stream, for leave to amend by setting up a prescriptive right to maintain the dam because of 40 years' adverse possession, was properly denied.

5. SAME—SUBJECT-MATTER—ALLOWANCE.
    In a suit by the people to enjoin the obstruction of a navigable stream, the subject-matter is the state's right to have the waters of the stream flow free and unobstructed; and hence, where there is no proof of the

value of that right, the extra allowance provided for in Code Civ. Proc. § 3253, should not be allowed.

Appeal from trial term, Albany county.

Injunction by the people of the state of New York against Edward N. Page. Appeal by the defendant from a judgment entered upon the decision of the trial term, enjoining the defendant from proceeding with the construction of a dam in the most southerly channel or sprout of the Mohawk river, below the state dam, and between the mainland and the island commonly known as Hemstreet's, or Simmons', or Page's island, and directing the defendant to remove the structure or dam or such part thereof as has been already built or placed in said river by him; also from an order denying a motion of the defendant to set aside the verdict of the jury on certain specific questions; also from an order of special term denying a motion of the defendant for leave to serve an amended answer; also from an order granting an extra allowance of costs. Affirmed in part, and reversed in part.

The action was commenced on the 5th day of December, 1896. In the complaint it is alleged that the Mohawk river is a navigable river; that the title to the bed thereof is vested in the people of the state; that the defendant has constructed a dam across the southerly channel of the river below the state dam between the mainland and the island commonly known as Simmons' or Page's island; that said dam is a purpresture and public nuisance, and will prevent the free and public use of the channel, and will set the water back upon the lands above the dam, to the serious injury of the property and existing water rights. In the answer, the erection of the dam and its permanent character are admitted, and all the other allegations of the complaint are denied. It is averred that the defendant is the owner and in possession of the land on each side of the stream at the place where the dam is built, and also of the land under water; that the source of his title is a grant made by Thomas Dongan, colonial governor, to Killian Van Rensselaer, November 4, 1685; that the southerly sprout where the dam is built is not now, and never has been, navigable. It is also averred that on or about January 28, 1897, the commissioners of the land office of the state of New York granted to the defendant the right to continue and maintain the dam as constructed by him. Upon the trial of the case, before the court and a jury, three specific questions were submitted to the jury,—as to whether or not the property of three certain parties had been injured by the construction or maintenance of the dam. The jury found that there was such injury as to the property of two of the named parties, but not as to the other. The court, in its decision finally disposing of the case, adopted the findings of the jury, and also found that the Mohawk river, at the locality in question, is a navigable river, and that the bed thereof and the land composing such bed below high-water mark are owned by the people of the state, and that the dam constructed by the defendant is a permanent encroachment upon the bed of a navigable river belonging to the state, and constitutes a purpresture and public nuisance; that the consent of the commissioners of the land office given on 28th January, 1897, to the defendant to continue and maintain the dam was not within the power of the commissioners, and did not confer any right to erect or continue the dam; and that its erection and maintenance by the defendant is in violation of the law. Judgment of abatement was accordingly ordered. The consent, referred to, of the commissioners of the land office, was based on a petition of the defendant dated January 12, 1897, and presented to the board on the 28th January, 1897, asking permission to continue and maintain the dam in question, and the action of the board is in the form of a resolution as follows: "Resolved, in so far as this board controls the lands described in the petition and upon said map, that the consent of the commissioners of the land office is hereby given and granted on behalf of the state of New York unto said Edward N. Page, his heirs and

assigns, to maintain said dam as now constructed: provided, however, that said Page shall at all times indemnify and save harmless the people of the state of New York for any claims for damages which may be presented against said state or the people thereof by virtue of the construction or maintenance of the dam: and provided, furthermore, that private rights and rights of property of individuals, if any, of every nature and description, shall not be taken away, impaired, or impeded: and further provided that the state is to be held in no wise liable or responsible for any act done by said Page, his heirs or assigns, and subject also to revocation at the discretion of the said board of land commissioners, also subject to any and all uses whatever for which the premises in question may be required for canal purposes as may and shall be defined and directed by the superintendent of public works."

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

David Muhlfelder (E. Countryman, of counsel), for appellant.
Theodore E. Hancock, Atty. Gen. (Hamilton Harris, Marcus T. Hun, and Learned Hand, of counsel), for the People.

MERWIN, J. The defendant claims title to the bed of the stream across which he has built his dam. His appropriation is permanent, and for his individual benefit solely. He owns the adjacent lands. The stream is the southwestern or outermost branch of the mouth of the Mohawk. There are several branches or sprouts through which the Mohawk finds its way to the Hudson, and it may be inferred from the evidence that at the time of the original grant to Van Rensselaer, in 1685, the southwest branch was one of the main branches, if not the main branch, of the river at that locality, and that there was no doubt then of the navigability in fact of the river, within the rule applicable to such rivers. The Montello, 20 Wall. 430; Morgan v. King, 35 N. Y. 454. It was undoubtedly a public river.

It is apparent from the grant to Van Rensselaer, in 1685, under which the defendant claims title, that Hudson river was then supposed to extend to the Cohoes Falls; and, if so, the mainland along the branch or sprout in question was understood then to be the west bank of Hudson river. The grant was of tracts "lyeing and being on and upon the banks of Hudson river," beginning at the south end or part of Berrent island, and "extending northward up along both sides of the said Hudsons river, into a place heretofore called the Kahoos or the Great Falls of the said river, and extending it selfe east and west all along from each side of the said river backwards into the woods twenty-four English miles." This description, it will be observed, is from the west side of the river westward, and from the side of the river eastward; and therefore whatever was between the east and west banks of the river would be excluded, and not within the bounds of the grant, unless, by implication, the bounds on either side went to the center of the stream. Such a construction would not be permissible within the cases that hold that the Mohawk and the Hudson rivers above tide water are navigable streams, and the title of the bed of the rivers in the people of the state. Canal Appraisers v. People, 17 Wend. 571; People ex rel. Loomis v. Canal Appraisers, 33 N. Y. 461; Smith v. City of Rochester, 92 N. Y. 463; Crill

v. City of Rome, 47 How. Prac. 398, affirmed at general term. See Van Buren v. Baker, 12 N. Y. St. Rep. 209; Jones v. Jones, 1 How. Prac. (N. S.) 510. In the Loomis Case, 33 N. Y. 461, the subject of navigable streams was elaborately and thoroughly discussed, and the conclusion there reached as to the status of the Mohawk river has not been overruled.

An element of some importance in the construction of this patent is the circumstance which seems to be quite clearly manifest,—that the grant was only in confirmation of grants Van Rensselaer had acquired from the Dutch authorities, and that such grants would, under the Dutch law, be construed as not vesting title to navigable or public streams, whether tidal or not. Nor does the general clause following the description "together with all and every the isles, islands, rivers, creeks, runs of waters, mines, minerals, * * * and all other royalties, powers, * * * and hereditaments whatsoever to the said premises or any part thereof belonging or appertaining," change the result. It does not operate as against the state to convey lands under water not within the boundaries of the grant.

The question whether the defendant, under the terms of the grant to his predecessor, Van Rensselaer, or by implication, has acquired title to the bed of the stream at the locality of the dam, is quite fully and satisfactorily discussed by the trial judge in the opinion delivered by him in deciding the case, and need not be further discussed here. We find no good reason for differing from him in his conclusion that the defendant did not acquire the title, but that it remains in the people of the state. The defendant claims that he is protected by the action of the commissioners of the land office of the state on the 28th January, 1897. The resolution is not a deed or letters patent. It is hardly claimed to be such. The notice required to be given of an application for a grant (Laws 1894, c. 317, § 71) was evidently not given, and this is said to be jurisdictional. People v. Schermerhorn, 19 Barb. 558. There were no recitals that such notice was given. The resolution contained a proviso that private rights and rights of property of individuals should not be impaired or impeded. It was found by the jury that the property of individuals was injured by the construction or maintenance of the dam. By subdivision 5, § 70, c. 317, Laws 1894, it was provided that the commissioners might authorize the use of lands of the state under water for certain purposes, but did not include a case like the present, and inferentially restricted the commissioners from authorizing the use except for the purposes therein stated. We are shown no statute that gives the commissioners authority to give a consent or license like the one here given. It seems to have been given after the suit was commenced. It did not, we think, prevent the continuance of the action, or operate as a defense. It did not estop the plaintiffs from asserting their rights. The fact that at present, in the changed condition of the stream, its use for commerce or navigation is insignificant, does not destroy the proprietary rights of the state, or give the defendant the right to appropriate the stream and bed to his individual use. People v. Vanderbilt, 26 N. Y. 287. The judgment should be affirmed.

The situation upon the appeal from the order denying the motion to amend the answer is substantially as follows: The case was tried in April, 1897, and the evidence then closed. Certain questions of fact were submitted to the jury, and all other questions were reserved for consideration of the court, it being agreed that argument should be had before the trial judge on the 21st June following. By subsequent agreement, the argument was postponed to the 18th September, at which time it took place, and briefs were to be submitted to the court within 10 days thereafter. On October 1st papers were served for a motion to be made at special term on the 9th October, for an order granting leave to defendant to serve an amended answer setting up the statute of limitations and title in defendant by prescription. In an affidavit by the defendant's attorney it was stated that he did not become advised of the necessity of pleading the statute of limitations and title by prescription until after his examination of the evidence and authorities preparatory to the final submission of the case, and that he finds it necessary to a proper and complete determination of the questions involved that the defendant should plead the exclusive occupation and possession by the defendant and his grantors of the property upon which said dam is erected for the period of more than 40 years under written claim of title. He also states in substance that such possession and occupation appear from the evidence, but does not state how or from whom. On the part of the plaintiff it was in substance denied that the proof went to that extent. The motion was not heard before the judge who tried the case. The motion, according to the notice, was based upon the evidence given at the trial, and we may assume, from the argument of the counsel on the appeal, that the evidence was in fact used on the hearing of the motion. It was not claimed by the defendant that he desired to give any further evidence. In the affidavit of the defendant's attorney it is stated that no further or additional proof on the part of either party can be offered. On the part of the plaintiff it was stated that further proof might be necessary. There was certainly great delay on the part of the defendant, and not much excuse shown for it. There is no affidavit by the defendant.

In view of the delay and the absence of any claim by defendant of the existence of any other evidence, it was certainly incumbent upon the defendant to show very clearly to the special term that there was in the case evidence from which the trial term would be authorized to find an adverse possession by the defendant or his grantors for 40 years prior to the commencement of the action. This he did not do. The action would not be barred unless that was shown. People v. Arnold, 4 N. Y. 508; In re Commissioners State Reservation, 37 Hun, 537, 548; Gould, Waters (2d Ed.) § 334. In the case in 37 Hun, Judge Bradley, speaking for the court in regard to a claim of a prescriptive right to maintain a dam and use the water, says (pages 548, 549):

"To constitute such bar and right, it is necessary that the use be enjoyed under a claim of right or adversely, and that it be notorious, continuous, and uninterrupted for the requisite time. 2 Washb. Real Prop. (4th

Ed.) 322, 326; Colvin v. Burnet, 17 Wend. 564; People v. Arnold, 4 N. Y. 508; Miller v. Garlock, 8 Barb. 153.  *  *  *  The use and enjoyment requisite to support the prescriptive right claimed relate as well to the use or diversion of the water as to the continuance of the dam. Stiles v. Hooker, 7 Cow. 266. The right to the usufruct of the water (except for purposes of navigation) is proprietary, and that of the state is paramount. Gould v. Railroad Co., 6 N. Y. 522; Crill v. City of Rome, 47 How. Prac. 398, and cases there cited. And although the riparian owner may, as such, use water of the river, and has rights in that respect which cannot be impaired by individuals, such rights are subordinate to that of the state; and, as against the latter, he cannot appropriate them to his use. People v. Tibbetts, 19 N. Y. 523. While the right to maintain the dam upon the bed depends upon the requisite uninterrupted continuance of it at the place where located, the right to use the water of the river is dependent on the like continuous diversion of it."

From an examination of the evidence in the case before us it is quite apparent that there is no evidence from which the trial court would have a right to find a continuous adverse possession of the water or bed of the stream for the requisite time. There was evidence that some 50 years ago there was a dam located near where the present one is, but it only remained a few years. There is no evidence that a dam was maintained continuously for 40 years. The present dam was built only a short time before the commencement of the action. The motion was, we think, properly denied.

It is claimed by the defendant that the order granting an extra allowance is not justified by the proof as to "the value of the subject-matter involved." Code, § 3253. We are of the opinion that the subject-matter of the litigation is the right of the state to have the waters of the Mohawk river flow free and unobstructed. There is no proof of the value of that right, and therefore no basis for the extra allowance, and none should be allowed.

Judgment and order denying motion to set aside verdict affirmed, with costs. Order denying motion to amend answer affirmed, with $10 costs and disbursements. Order granting motion for extra allowance reversed, with $10 costs and disbursements, and motion denied. All concur.