should deprive respondent of the right to now enter judgment. It is not asserted that the delay has resulted in any prejudice to the appellant, or that the relative situation of the parties had in any way been changed. Under these circumstances, mere delay is not considered to effectually bar a remedy, especially since the time within which an action might be brought at law upon the bond—a sealed instrument—has not expired.

[3] The appellant's real object appears to be to contest the question whether or not he ever executed the bond and mortgage. That question, however, was necessarily decided against him before the interlocutory judgment was entered, and, as he never appealed from that judgment, it stands as a conclusive adjudication against him that he did execute the bond and mortgage, and would be conclusive against him upon that question, even if the plaintiff was remitted to an action upon the bond.

The order appealed from was right, and should be affirmed, with costs. All concur.

---

(77 Misc. Rep. 398.)

### DOOLEY v. PROCTOR & GAMBLE MFG. CO.

(Supreme Court, Special Term, Richmond County.   July, 1912.)

1. NAVIGABLE WATERS (§ 39*)—RIPARIAN RIGHTS—NATURE AND EXTENT.
   Right of access of a riparian owner to the deep or open waters is limited to access from the front of his uplands, and is subordinate to the exercise of the power of the Legislature or of Congress for the improvement of navigation or the regulation of commerce.
   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 117, 127, 239–244;  Dec. Dig. § 39.*]

2. NAVIGABLE WATERS (§ 43*)—RIGHTS OF PUBLIC—FILLING IN SHORE.
   Under Laws 1857, c. 763, establishing a bulkhead and pier line along the north shore of Staten Island, and Public Lands Law (Consol. Laws 1909, c. 46) § 75, subd. 4, authorizing commissioners of the land office to grant lands under water surrounding Staten Island and establish bulkhead lines, solid filling in of all waters, including bays and creeks, within bulkhead lines, is permissible.
   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 104, 256–265;  Dec. Dig. § 43.*]

3. NAVIGABLE WATERS (§ 43*)—RIGHTS OF RIPARIAN OWNERS—"FRONT."
   Where, in 1875, the United States government built a dike, which follows the course of a bulkhead line established under Laws 1857, c. 763, along the north shore of Staten Island, substantially east and west in front of the uplands of plaintiff and defendant, and the waters within the dike, prior to the erection of a wharf and bulkhead upon defendant's neighboring uplands and fillings, were unnavigable for ordinary commercial purposes, and the bulkhead line, both legally and physically, indicates the line of deep water, plaintiff's riparian rights are determined with reference thereto;  the "front" of plaintiff's lands, from which she has right of access to deep water, being that portion which is abreast of the bulkhead line, namely, its north shore.
   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 104, 256–265;  Dec. Dig. § 43.*
   For other definitions, see Words and Phrases, vol. 4, p. 2991.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
     137 N.Y.S.—47

**4. NAVIGABLE WATERS (§ 39*)—RIPARIAN RIGHTS—ACTIONS TO DETERMINE.**

The prayer of a complaint by the owner of uplands along the north shore of Staten Island for the removal of defendant's erections and fillings within the limits of its patent to the east of plaintiff's uplands will be denied, on the ground that they do not unlawfully interfere with plaintiff's riparian rights.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 117, 127, 239–244; Dec. Dig. § 39.*]

**5. NAVIGABLE WATERS (§ 37*)—STATUTORY PROVISIONS—CONSTRUCTION.**

Public Lands Law (Consol. Laws 1909, c. 46) § 75, subd. 5, prohibiting a grant of lands under water to any person other than the owner of "adjacent land," was intended to recognize and protect the riparian right of access to deep water, which existed independent of statute.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*]

**6. NAVIGABLE WATERS (§ 37*)—RIPARIAN RIGHTS—STATUTORY PROVISIONS—"ADJACENT LANDS."**

A patent granted to a riparian owner on the north shore of Staten Island in 1880, in so far as it includes lands under water to the north of the uplands of an adjoining owner, upon which lands a portion of defendant's erections and fillings is, overlaps to that extent a patent granted to the adjoining owner in 1887, impairs her right of access, and contravenes Public Lands Law (Consol. Laws 1909, c. 46) § 75, subd. 5, prohibiting a grant of lands under water to any person other than the owner of "adjacent lands"; the quoted phrase, as used in the statute, including the uplands of the adjoining owner.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 1, pp. 184–187; vol. 8, pp. 7565, 7566.]

**7. NAVIGABLE WATERS (§ 36*)—LANDS UNDER WATER—PUBLIC GRANT.**

The power of the commissioners of the land office to determine how they shall apportion the lands under water between adjoining owners cannot be exercised arbitrarily in contravention of statute.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 180–200; Dec. Dig. § 36.*]

**8. NAVIGABLE WATERS (§ 39*)—RIPARIAN RIGHTS—FILLING IN SHORE.**

In apportioning frontage on a bulkhead line along the north shore of Staten Island between plaintiff and defendant, owners of adjoining uplands, the proper division is a line running north from the most easterly point of plaintiff's uplands to the bulkhead line, where the easterly line in plaintiff's patent so runs.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 117, 127, 239–244; Dec. Dig. § 39.*]

**9. NAVIGABLE WATERS (§ 37*)—RIPARIAN RIGHTS—NATURE AND EXTENT.**

Neither of two adjoining upland owners along the north shore of Staten Island was entitled to extend frontage on the bulkhead line because of a short frontage on a creek and cove, and there was not an undue quantity of the lands under water of the creek and cove granted by the patent of one of the owners, within the rule that the value of lands under water is in proportion to the quantity and they should be apportioned so that the parties will have an equal share thereof in proportion to their uplands.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*]

10. NAVIGABLE WATERS (§ 37*)—RIPARIAN RIGHTS—ACTIONS TO DETERMINE.
    Where a complaint not only demands judgment that defendant upland owner be restrained from committing trespass upon the lands under water within the description in her patent, but also that he be barred from all claims to and estate in the lands, and that the patent under which he claims, so far as it purports to convey any of the lands under water which are within plaintiff's patent, be adjudged void, the action, properly limited as one to quiet title, and to remove a cloud therefrom, and to enjoin defendant's interference with plaintiff's lands under water, is maintainable.

    [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*]

11. LIMITATION OF ACTIONS (§ 60*)—ACTIONS SUBJECT TO LIMITATION—QUIETING TITLE.
    An action to quiet title and to remove a cloud thereon, and incidentally to enjoin defendant's interference with plaintiff's lands under water, by reason of its nature, is not barred by limitations.

    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 333–341; Dec. Dig. § 60.*]

Action by Ann Dooley against the Proctor & Gamble Manufacturing Company for injunction and other relief. Trial by court without jury. Judgment for plaintiff.

Calvin D. Van Name, of New York City, for plaintiff.

Kenney & Eadie, of New Brighton (John J. Kenney, of New Brighton, and William Allaire Shortt, of New York City, of counsel), for defendant.

SCUDDER, J. Plaintiff claims to be owner of uplands on the north shore of Staten Island at the juncture of bodies of water popularly known as "Arthur Kill" and "Newark Bay." Neighboring uplands belong to defendant, and in connection therewith it has erected a wharf and bulkhead and has filled in lands under water. These erections and fillings are alleged by plaintiff to unlawfully interfere with her riparian rights, and also to be partly upon lands under water belonging to her.

The allegations of the complaint present two distinct propositions for consideration: First, the riparian rights of plaintiff to the east of her uplands, by reason of her easterly shore frontage on Newark Bay, and her frontage on the creek, which forms part of the southerly boundary of her uplands; and second, the validity or invalidity of the respective patents under which plaintiff and defendant claim ownership of lands under water, the boundaries of which overlap to the north of plaintiff's uplands.

The question of plaintiff's riparian rights to the east of her uplands will be first considered. It appears that, prior to the erections and fillings made by defendant in front of its uplands, the creek which constitutes the southern boundary of plaintiff's uplands flowed past defendant's foreshore, in an easterly direction in a channel or groove into the bed of Newark Bay. Defendant's erections and fillings entirely obstruct this channel or groove, and

also extend north across the whole of the eastern shore of plaintiff's uplands. Plaintiff claims that defendant has thereby unlawfully interfered with her right of access as riparian owner to the waters of Newark Bay from the creek and her eastern shore.

[1] Right of access of the riparian owner to the deep or open waters, which the public policy of this state recognizes, is limited to access from the "front" of his uplands, and it is also "subordinate to the exercise of the power of the Legislature or of the Congress for the improvement of navigation or for the regulation of commerce." Town of Brookhaven v. Smith, 188 N. Y. 74, 82, 87, 80 N. E. 665, 670; Yates v. City of Milwaukee, 10 Wall. 497, 504, 19 L. Ed. 984; Jenks v. Miller, 14 App. Div. 474, 481, 43 N. Y. Supp. 927 (opinion by Cullen, J.); People v. Mould, 37 App. Div. 35, 55 N. Y. Supp. 453; Gould, Waters (3d Ed.) §§ 153, 154. In order, therefore, to determine whether or not defendant has unlawfully interfered with plaintiff's alleged riparian right of access from the creek and the eastern shore of her property, the situation of plaintiff's uplands with reference to the surrounding waters must be considered.

[2] The uplands and waters are within the limits of the great harbor of New York. For the purpose of developing this portion of the harbor, and in the interest of commerce, the Legislature of the state of New York in 1857 established a bulkhead and pier line along the shore upon which plaintiff's and defendant's uplands are situated. Laws of 1857, c. 763. The commissioners of the land office were also authorized by statute to grant lands under water surrounding Staten Island to established bulkhead lines. Public Lands Law (Consol. Laws, c. 46) § 75, subd. 4. Under these statutes solid filling to the bulkhead lines is permissible. See Williams v. City of New York City, 105 N. Y. 419, 430, 435, 11 N. E. 829.

[3] The course of the bulkhead line in front of plaintiff's and defendant's uplands is substantially east and west. The commissioners of the land office may authorize the filling in of all waters within this line, including bays and creeks. The physical condition or situation justifies authorization by the commissioners of the filling in of the waters to the east of plaintiff's uplands. In 1875 the United States government built a dike, which follows the course of the bulkhead line. The waters within the dike, prior to defendant's erections and fillings therein, were unnavigable for ordinary commercial purposes; the bed of the bay for the most part being exposed at low tide, and the water in the channel through which the creek flowed not exceeding two or three feet in depth. The bulkhead line, therefore, indicates both legally and physically the line of deep water; and it is with reference to this line that plaintiff's riparian rights are to be determined. The "front" of plaintiff's uplands, from which she has a right of access to deep water, is that portion of her uplands which fronts or is abreast of the bulkhead line. As this line runs east and west, the "front" of her uplands is its north shore.

The reason of the law in confining the riparian right of access to the front of the uplands, and in not recognizing such right laterally, is well illustrated in the present case. To allow plaintiff a paramount right of access from the eastern shore of her uplands to the waters of the bay would seriously interfere with the harbor's development to the east of her uplands, by preventing the building of piers and bulkheads, and would deprive defendant and other upland owners of any access to deep water. One of the defendant's predecessors in title obtained a patent for lands under water extending from defendant's uplands to the bulkhead line. The validity of this patent in its entirety is more fully considered subsequently. It is sufficient here to say that its validity cannot be questioned by plaintiff, in so far as it grants land under water to the east of plaintiff's uplands.

[4] My conclusion on this branch of the case is that defendant's erections and fillings within the limits of its patent to the east of plaintiff's uplands do not unlawfully interfere with any riparian right to which plaintiff may be entitled, and the prayer of the complaint for their removal must be denied.

The second branch of the case remains to be considered, namely, the validity or invalidity of the respective patents of the parties, with special reference to the lands under water where the boundaries of the patents overlap. Defendant's patent is the elder, having been granted in 1880, while that of the plaintiff was granted in 1887. Defendant's patent includes lands under water to the north of plaintiff's uplands, and between them and the bulkhead line, and to that extent overlaps plaintiff's patent. A portion of defendant's erections and fillings is upon these lands under water.

[5] The statutes of this state prohibit the granting of lands under water to any person other than the proprietor of "adjacent lands." Public Lands Law (Consol. Laws, c. 46) § 75, subd. 5. In thus limiting grants of lands under water, it was the intention of the Legislature to recognize and protect the riparian right of access to deep water, which the courts of this state have held to exist independent of statute. See Town of Brookhaven v. Smith, 188 N. Y. 74, 87, 80 N. E. 665. The statute is to be construed and applied with reference to this legislative intent. In the present case, as stated in a previous part of this opinion, plaintiff's right of access to deep water is from the north shore of her uplands; that being the shore which fronts the bulkhead line.

[6] Defendant's grant, in so far as it includes lands under water to the north of plaintiff's uplands, impairs plaintiff's right of access, and contravenes the intent of the statute to protect such right. Plaintiff's uplands are, therefore, to be regarded as "the adjacent lands" to the lands under water which are between them and the bulkhead line, within the meaning of the statute.

[7] It is contended, however, in behalf of defendant, that it was within the power and jurisdiction of the commissioners of the land office, in granting lands under water, to determine how they should be apportioned between adjoining "adjacent" owners, and that in the

exercise of such power the commissioners have properly granted to defendant's predecessor in title lands under water with a frontage on the bulkhead line equal to the entire length of shore line of defendant's uplands, including their frontage on the creek and small bay or cove into which the creek flows to the south of plaintiff's uplands. While it may be true that the commissioners have the power, in granting lands under water, to determine how they shall be apportioned between adjoining owners, they cannot exercise such power arbitrarily and in contravention of the statute by which their power to grant lands under water is conferred.

"In determining who are adjacent owners and how grants of land should be apportioned between adjoining adjacent owners, * * * the same principles apply as govern the division between riparian proprietors of lands formed by alluvion." People ex rel. Cornwall v. Woodruff, 30 App. Div. 43, 46, 51 N. Y. Supp. 515, 516; affirmed on opinion below 157 N. Y. 709, 53 N. E. 1129.

[8] In applying these rules to the situation here presented, the important features to be considered are the irregular shore line, marked by deep indentations and sharp projections, and the bulkhead line. To this situation the following rule applies:

"The lateral limits of land granted to a patentee must be perpendicular to the shore, not so much of it only as adjoins the subject of the grant but to its general course; otherwise, where the shore is irregular and crooked, the grants to which adjoining owners would be entitled (should any be made) might conflict with each other, and there would be no principle upon which the controversies could be settled." People ex rel. Cornwall v. Woodruff, supra, 30 App. Div. 46, 47, 51 N. Y. Supp. 517, following and quoting People v. Schermerhorn, 19 Barb. 540.

See, also, Knickerbocker Ice Co. v. Shultz, 116 N. Y. 382, 388, 22 N. E. 564.

There are no cases in this state which involve the apportionment of grants of land under water with reference to an established bulkhead line. This question was considered by the Supreme Court of Rhode Island in the case of Aborn v. Smith, 12 R. I. 370. From the interesting and instructive opinion of Durfee, C. J., in that case, we quote the following:

"The complainants and the defendants are owners of adjoining estates on the west bank of the Providence river. The complainants bring this suit to get their water front defined as against the defendants, and to get it protected from encroachments by injunction. The estates lie within the harbor line established in 1855, beginning from above and extending considerably below the estates. This line runs down the river without change of direction to a point near its end, where the spur of a projecting headland which makes a deep elbow in the shore is penetrated by an irregular cove or inlet. That portion of the shore which belongs to the complainants is slightly elongated by its curvature. The shore above has been filled and improved to a very considerable extent, and in many places completely out to the harbor line. The complainants claim a frontage on the harbor line proportionate to their shore line. * * * The rule invoked by the complainants is a rule borrowed from a work on the civil law which was applied by the Supreme Judicial Court of Massachusetts to the apportionment of alluvion in the bend of an unnavigable river. Deerfield v. Arms, 17 Pick. [Mass.] 41 [28 Am. Dec. 276]. The rule has been approved as a rule for the apportionment of alluvion in New York and in the Supreme Court of the United States. O'Donnell v. Kelsey, 10 N. Y. 412, 415; Nott v. Thayer, 2 Bosw. 10; Johnston v. Jones,

1 Black, 209 [17 L. Ed. 117]. It has also been applied, but not invariably, to the apportionment of tide-flowed flats lying in a cove or littoral recess among owners of the uplands.   *   *   *   We are not advised that any rule has ever been laid down for a case like the one at bar. The problem here is to define water fronts in regard to a harbor line, not to divide flats or alluvion. The establishment of a harbor line, we have held, amounts to an implied permission to the riparian proprietors within it to fill out to it. The question is, How to fill out to it? We answer, Fill straight out to it. The owners of the upland are impliedly permitted to carry the upland forward to the harbor line, so that each owner will occupy the part which is abreast of his own land. There may be exceptional cases, where the shore or harbor line is so peculiar that permission to fill straight out cannot be implied.   *   *   * It follows that the dividing line between the water fronts here, in case the parties have not established one for themselves, is a line drawn from the shore end of the dwelling line so as to intersect at right angles. This rule is analogous to the rule laid down in Gray v. Deluce, 5 Cush. [Mass.] 9, and to the rule applied in Thornton v. Grant, 10 R. I. 477–487 [14 Am. Rep. 701]."

Although, under the New York rule above stated, the lateral limits of a grant must be perpendicular to the "general course" of the shore, it does not necessarily follow that, if the New York rule were applied to a situation like that presented in the Rhode Island case, a different result would have been reached from that which was reached by the learned court in that case. If the "general course" of the shore were a straight line parallel with the harbor line, it would be wholly immaterial whether the lateral limits of grant were made perpendicular to the "general course" of the shore or to the harbor line. In the case now under consideration, the "general course" of the shore of defendant's uplands is a straight line east and west and parallel to the bulkhead line. Whether, therefore, the New York or the Rhode Island rule is applied, the proper division line for the purpose of apportioning frontage on the bulkhead line between plaintiff and defendant is a line running north from the most easterly point of plaintiff's uplands to the bulkhead line. The easterly line in plaintiff's patent so runs, and it is the proper division line between plaintiff's lands under water, which are north of her uplands, and those of the defendant.

[9] Before taking up the question whether or not the validity of defendant's patent can be attacked by plaintiff in the present action, upon the ground that it improperly grants land under water to the north of plaintiff's uplands, it is necessary to consider the further issue raised by plaintiff, namely, that defendant's patent grants an undue proportion of lands under water of the creek and of the small cove into which the creek flows, which lie between plaintiff's and defendant's uplands. It is not questioned that the lands under water of this creek and cove are included in the lands under water "adjacent to and surrounding Staten Island," which the commissioners of the land office are authorized by statute to grant. Public Lands Law (Consol. Laws, c. 46) § 75, subd. 4. Although plaintiff has not obtained a grant of any lands under water of the creek and cove, she has the right to make application therefor.

Upon grounds which have already been stated, neither plaintiff nor defendant is entitled to an extended frontage on the bulkhead line by reason of their shore frontage on the creek and cove. See People ex rel. Cornwall v. Woodruff, supra. Frontage on the bulk-

head line is not, therefore, an element to be taken into consideration in the apportioning of lands under water of the creek and cove. The value of these lands under water is in proportion to the quantity, and they should be apportioned so that the parties will have an equal share thereof in proportion to their uplands. See Deerfield v. Arms, 17 Pick. (Mass.) 41, 45, 28 Am. Dec. 276. This rule is not to be applied arbitrarily, but equitably and judiciously, with regard to the whole situation presented, and, when so applied, it does not appear that an undue quantity of the lands under water of the creek and cove has been granted by defendant's patent. The result is that the only injury disclosed by the evidence for which plaintiff may seek redress by action is the unlawful grant to another of the lands under water to the north of her uplands, and it remains to be considered whether she can obtain relief therefor in the action which she has brought.

[10] It is well settled that, where evidence dehors the patent is required to show the validity thereof, the patent can be avoided only in a direct proceeding to review the action of the commissioners, or by an action in equity to vacate the patent. This rule, however, does not prohibit an action by an individual to have a patent declared void as a cloud on his title. Lally v. N. Y. C. & H. R. R. Co., 123 App. Div. 35, 107 N. Y. Supp. 868, and cases there cited. If the present action was purely one to restrain a trespass, plaintiff would be concluded by defendant's patent, and no relief could be granted. Saunders v. N. Y. C. & H. R. R. Co., 144 N. Y. 75, 38 N. E. 992, 26 L. R. A. 378, 43 Am. St. Rep. 729. Plaintiff in her complaint, however, not only demands judgment that defendant be restrained from committing acts of trespass upon the lands under water within the confines of the description in the letters patent under which she claims, but she also demands judgment that defendant be barred from all claim to and estate in said lands under water, and that the patent under which defendant claims, so far as it purports to convey any of the lands under water that are within plaintiff's patent, be adjudged void and of no effect. In view of this prayer for relief, and the allegations of the complaint which support it, the action may properly be limited as one to quiet title, and to remove a cloud thereon, and incidentally to enjoin defendant's interference with lands under water to which plaintiff's title is established. Such an action may be maintained (Lally v. N. Y. C. & H. R. R. Co., supra), and under the facts established by the evidence in this case plaintiff is entitled to the relief demanded.

Each party attacks the validity of the patent of the other for alleged defects and irregularities in the application therefor. It is not necessary to determine these questions, since plaintiff is not entitled to a grant of the lands under water included in defendant's patent, other than that portion of them which is in front of plaintiff's uplands, and defendant is not entitled to a grant of the lands under water which have been granted plaintiff. See Peabody Gold Mining Co. v. Gold Hill Mining Co. (C. C.) 106 Fed. 241.

[11] The action by reason of its nature, is not barred by the statute of limitations. See Miner v. Beekman, 50 N. Y. 337, 343; People ex rel. Townsend v. Cady, 18 Jones & S. 399, 403; Galway v. Metropolitan El. R. Co., 128 N. Y. 132, 28 N. E. 479, 13 L. R. A. 788.

Judgment for plaintiff in accordance with this opinion, with costs.

Judgment for plaintiff, with costs.